# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DR. ERIK NATKIN, D.O. P.C.**, a Utah corporation; and **DR. ERIK NATKIN, D.O.**, an individual, | Case No. 3:16-cv-1494-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **AMERICAN OSTEOPATHIC ASSOCIATION, _et al._**, | |
| Defendants. | |

Benjamin Natkin, LAW OFFICES OF BENJAMIN NATKIN, 9854 National Boulevard, Suite 369, Los Angeles, CA 90034; and Clark E. Rasche, WATKINSON LAIRD RUBENSTEIN PC, P.O. Box 10567, Eugene OR 97440. Of Attorneys for Plaintiffs.

Blake J. Robinson and Caitlin P. Shin, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland OR 97201. Of Attorneys for Defendants Samaritan Health Services, Inc.; Good Samaritan Hospital Corvallis; Albany General Hospital; Mid-Valley Healthcare, Inc.; Samaritan Pacific Health Services, Inc.; Samaritan North Lincoln Hospital; and Dr. Luis R. Vela, D.O.

J. Michael Porter, MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204; and Mark H. Meyerhoff and Christopher S. Frederick, LIEBERT CASSIDY WHITMORE, 6033 West Century Boulevard, Fifth Floor, Los Angeles, CA 90045. Of Attorneys for Defendant Western University of Health Sciences.

Michael C. Lewton, COSGRAVE VERGEER KESTER LLP, 900 SW Fifth Avenue, 24th Floor, Portland, OR 97204; John R. Danos, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, 555 S. Flower Street, Suite 2900, Los Angeles, CA 90071; and Joshua P. Dennis, SCHWABE, WILLIAMSON & WYATT, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Defendant American Osteopathic Association.

Thomas R. Rask III, KELL ALTERMAN & RUNSTEIN LLP, 520 SW Yamhill Street, Suite 600, Portland, OR 97204; and Ronald Thomas Vera and Robert P. Johnston, LAW OFFICES OF VERA AND BARBOSA, 223 West Foothill Boulevard, Suite 200, Claremont, CA 91711. Of Attorneys for Defendant Osteopathic Postdoctoral Training Institute, OPTI-West Educational Consortium.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Stacie Beckerman issued three Discovery Orders in this case (ECF 238, ECF 239, and ECF 248). Judge Beckerman granted in part and denied in part Plaintiffs' informal motion to compel, sent by email. Judge Beckerman also granted in part and denied in part the informal motion to compel of the Samaritan Defendants (Good Samaritan Hospital Corvallis, Samaritan Health Services, Inc., and Dr. Luis R. Vela, DO), also sent by email. Plaintiffs timely filed objections (ECF 250 and ECF 251), and the Samaritan Defendants timely responded (ECF 255 and ECF 257).

## STANDARDS

The Federal Magistrates Act grants district courts the authority to delegate certain matters to magistrate judges. *See* 28 U.S.C. § 636(b)(1). In civil actions, a district court may designate a magistrate judge to determine any pretrial matter, except motions for injunctive relief, for judgment on the pleadings, for summary judgment, to permit or deny maintenance of a class action, to dismiss for failure to state a claim, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). For any of these excluded motions, a district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B).

Rule 72 of the Federal Rules of Civil procedure implements the authority provided by the Federal Magistrates Act. Under Rule 72(a), a magistrate judge may "hear and decide" all referred pretrial matters that are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); *see also Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (explaining that "magistrate judges may hear and determine nondispositive matters, but not dispositive matters"). For pretrial matters referred to a magistrate judge that are dispositive of a claim or defense, without consent by all parties, Rule 72(b) allows the magistrate judge only to "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1).

The distinction between a dispositive motion and a nondispositive matter is significant for the standard of review. When a party timely objects to a magistrate judge's findings and recommendations concerning a dispositive motion, the district judge must make a *de novo* determination of those portions of the magistrate judge's proposed findings and recommendations to which an objection has been made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). When a party timely objects to a magistrate judge's determination of a nondispositive matter, however, the district judge may reject that determination only when it has been shown that the magistrate judge's order is either clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This means the Court "will evaluate the Magistrate Judge's factual findings to determine if any are clearly erroneous" and "will evaluate the Magistrate Judge's legal conclusions to determine if any are contrary to law, which involves a *de novo* review of those issues." *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019); *see also id.* at 1141-42.

## DISCUSSION

Judge Beckerman resolved the informal discovery disputes sent by emails to her chambers without formal motion practice. Thus, there are some formalities, such as Local

Rule 37-1, that do not apply,[1] and some information that might otherwise have been in the record that is not. The parties supplemented the record in their objections and responses before this Court, which the Court accepts.

## A.  Objections to the Discovery Order Resolving the Samaritan Defendants' Motion

### 1.  Application of Oregon Law

Plaintiffs first object that Judge Beckerman erroneously applied Oregon law in deciding the discovery disputes. The Court, however, already determined that Oregon law applies to the claims involving the Samaritan Defendants. *See* ECF 143 at 7 (adopting Judge Beckerman's recommendation). The Court declined to decide at that time whether to apply Oregon or California law on the claims against the *other defendants*, Western University of Health Sciences, American Osteopathic Association, and OPTI-West Educational Consortium. *Id.* at 25 n.7. The Court will not revisit this determination. This resolves several of Plaintiffs' other objections, which are based on the application of California law.

### 2.  Oregon Revised Statutes § 40.225

Plaintiffs next object to Judge Beckerman's decision under Oregon Revised Statutes § 40.225. Judge Beckerman concluded that Oregon's privilege law applied to protect certain requested information, finding that Dr. Lewis Burgess was a representative of Dr. Natkin. Judge Beckerman noted that there was no evidence in the record showing that Dr. Burgess was a representative employed by Dr. Natkin's then-attorney, B. Kevin Burgess, Esq., to assist him. Plaintiffs provide supplemental evidence showing that Mr. Burgess "engaged the services of Dr. Todd Lewis . . . to assist [him] on a volunteer basis by appearing in [his] stead at

---

[1] Because of the informal nature of how the disputes were raised, the Court overrules Plaintiffs' objection that the Samaritan Defendants' "motion" to compel should be denied because they failed to comply with Local Rule 37-1.

Dr. Natkin's hearing." Decl. of B. Kevin Burgess, Esq., ¶ 5 (ECF 250-1 at 2). Based on the new

evidence, the Court declines to adopt the finding by Judge Beckerman on this issue and instead

finds that Dr. Lewis was a representative of both Dr. Natkin and Mr. Burgess. This finding,

however, does not affect the outcome of Judge Beckerman's Discovery Order on this issue

because she found the requested communications involving Dr. Lewis to be privileged.

### 3. Amount of Attorney's Fees

Plaintiffs also object to Judge Beckerman's conclusion that the amount of attorney's fees

is not privileged and her order that Plaintiffs must produce the requested information. Plaintiffs

and the Samaritan Defendants agree that this conclusion by Judge Beckerman is now moot

because the Samaritan Defendants are no longer requesting this information. The Court,

therefore, declines to adopt this portion of Judge Beckerman's Order as moot.

### 4. Privilege Log

Plaintiffs next object to Judge Beckerman's requirement that Plaintiffs produce a

privilege log that discloses "the nature of the correspondence, the date of sending, the sender and

recipient(s), and a brief statement describing the subject of the content." ECF 239 at 4-5.

Plaintiffs argue that this degree of detail requires disclosure of privileged information because

the timing, nature, and frequency of privileged communications will disclose investigative

efforts and litigation strategy. Under the circumstances of this case, the Court finds no error in

Judge Beckerman's requirement that Plaintiffs produce a routine privilege log. See Fed. R. Civ.

P. 26(b)(5)(A)(ii).

### 5. Psychotherapist Privilege

Plaintiffs object that Judge Beckerman erroneously construed Oregon law in concluding

that Dr. Natkin waived his psychotherapist privilege by generally asserting noneconomic

damages without claiming any "emotional condition" or intending to produce any expert

testimony on any "emotional condition" or emotional distress. This is a legal issue that the Court reviews *de novo*.[2] The Oregon Supreme Court has not determined the contours of the psychotherapist privilege or its litigation waiver. The Court, therefore, will consider how the Oregon Supreme Court likely would rule if faced with this question. *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (stating that without specific state supreme court guidance, a federal court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance").

The psychotherapist-patient privilege is established in Oregon Revised Statutes § 40.230, Oregon Evidence Code (OEC) 504, which provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purposes of diagnosis or treatment of the patient's mental or emotional condition among the patient, the patient's psychotherapist or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

---

[2] Plaintiffs also object that Judge Beckerman erroneously assumed that Plaintiffs are claiming emotional distress damages by seeking noneconomic damages in the amount of $51,000,000. Plaintiffs, however, do not assert what other type of noneconomic damages they are request in the amount of $51,000,000. Plaintiffs state that they multiplied their economic damages by five, which they contend is standard practice in California. Regardless of whether a multiplier of economic damages provides an adequate assessment of the amount of noneconomic damages, that does not answer the question of the type of harm noneconomic damages are intended to compensate in this case. Plaintiffs do not contend that Dr. Natkin was physically harmed, and thus do not claim physical pain and suffering. It defies common sense to argue that Plaintiffs assert $51,000,000 in noneconomic damages and none of it includes compensation for emotional distress damages. Indeed, it appears that the only noneconomic harm that Plaintiffs seek are for reputational injury and related emotional distress (including mental suffering and humiliation). *See, e.g.*, Or. Rev. Stat. § 31.705 (defining "noneconomic damages" as "subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment").

Or. Rev. Stat. § 40.230(2). This statute also establishes limitations on the privilege, meaning circumstances in which communications are not privileged. This includes the directive that "[t]here is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient: (A) In any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense." *Id.* § 40.230(4)(b)(A).

The Oregon Supreme Court has not specifically construed the litigation limitation provision of the statute. That court, however, has quoted the limitation contained in OEC 504(4)(b)(A) and noted that a similar limitation is not contained in the physician-patient privilege. *Hodges v. Oak Tree Realtors, Inc.*, 363 Or. 601, 611 (2018). The Oregon Supreme Court analyzed that provision in *In re Starr*, 330 Or. 385 (2000). In *Starr*, a special master had found that the affected party "waived" the psychotherapist privilege, which the Oregon Supreme Court considered under OEC 504(4)(b)(A), as a potential situation where there is "no privilege where patient relies on particular condition as element of patient's claim or defense." *Id.* at 390. The Oregon Supreme Court did not consider that issue under OEC 511, Oregon's general privilege waiver provision.

In *Starr*, the affected party, a person having a dispute with the Oregon State Bar, argued that "she did not make her emotional state an element of her claim or defense." *Id.* The Oregon Supreme Court disagreed, discussing how the Oregon State Bar had asked the applicant for information regarding how she was handling emotional and psychological issues and that the applicant had responded by submitting supplemental information noting her "regular psychotherapy" to address the issues that had resulted in her bar disciplinary hearings, providing the dates of those appointments, and providing a report by a psychotherapist who evaluated her and her underlying records for purposes of preparing the report. *Id.*

The Oregon Supreme Court concluded:

> Regardless of the label that applicant attached to her problems, she clearly indicated in her submissions to the Bar that there was an emotional component to her past conduct that she was addressing through psychotherapy. The fact that applicant submitted her therapist's appointment calendar and other psychological materials leads to the reasonable inference that she wished to create the impression that she had dealt with the emotional problems using that therapeutic approach. Although the Bar may have encouraged her to do so, it was applicant's choice to interject her psychological condition and treatment into the inquiry—most likely because she understood that it was an important, perhaps critical, issue to the Bar and that ignoring it would not serve her cause. And, once applicant raised the issue as pertinent to her claim that she now is entitled to reinstatement, she waived the privilege that ordinarily would apply to her communications with that psychotherapist.

*Id.* at 391. The Oregon Supreme Court discussed the lack of privilege under OEC 504(4)(b)(A) as a "waiver."

The Oregon Court of Appeals has not specifically construed the scope of the limitation contained in OEC 504(4)(b)(A). The case most cited for the proposition that Oregon's statute provides a "broad" limitation (also referred to by Oregon courts as a waiver) is *Baker v. English*., 134 Or. App. 43 (1995*), aff'd in part, rev'd in part*, 324 Or. 585 (1997). In *Baker*, the Oregon Court of Appeals stated: "There is no dispute that Drucker's records, as they pertained to plaintiff himself, were not privileged, because plaintiff put his own psychological condition into question by claiming emotional distress damages." *Id.* at 46-47. The parties in *Baker*, however, did not dispute on appeal whether the psychotherapist's records were privileged, but instead disputed the trial judge's Rule 403 balancing analysis. Thus, the court of appeals in *Baker* did not analyze the scope of the privilege or the limitation contained in OEC 504(4)(b)(A). Indeed, all Oregon appellate cases citing *Baker* simply follow it as purported precedent on this issue, without further analysis. *See, e.g.*, *McClusky v. City of North Bend*, 308 Or. App. 138, 139 n.1 (2020) (noting that it was "bound" by *Baker* to reject the plaintiff's argument challenging the

trial court's decision that the plaintiff "waived" the psychotherapist privilege by alleging "garden variety" noneconomic damages).

*Baker*, however, does not have precedential value on the specific question at issue because it was not disputed, analyzed, and resolved by the Oregon Court of Appeals; it was merely a statement made in *dicta*. *See Engweiler v. Persson*, 354 Or. 549, 557-58 (2013) ("This court may consider itself bound to follow a prior statutory construction as a matter of *stare decisis*. When the court's prior construction is mere *dictum*, however, it has no such precedential effect. *See, e.g.*, *Mastriano v. Board of Parole*, 342 Or. 684, 692 n.8, 159 P.3d 1151 (2007) ('This court has declined to treat a prior interpretation of a statute as authoritative when it is dictum.'). '*Dictum*' is short for '*obiter dictum*,' Latin for 'something said in passing.' *Black's Law Dictionary* 1102 (8th ed. 2004). In judicial opinions, it commonly refers to a statement that is not necessary to the court's decision." (citations omitted)).

Plaintiffs cite *Schiele v. Montes*, 231 Or. App. 43 (2009). In *Schiele*, the plaintiff brought a claim for intentional infliction of emotional distress (IIED). *Id.* at 45. The defendant sought to take the deposition of the plaintiff's psychotherapist and the plaintiff objected. *Id.* The plaintiff submitted a declaration stating that he does not waive his psychotherapist privilege, he does not "rely on any medical, mental or emotional condition as an element of any claim in this case," and that he will not call his psychotherapist or any other doctor to testify in support of his claims. *Id.* The defendant then moved to dismiss the IIED claim, and the trial court dismissed the claim. *Id.* at 45-46. The Oregon Court of Appeals explained that the parties' dispute centered around the meaning of the term "emotional condition." *Id.* at 48. The court explained:

> Our standard of review requires us to view the evidence—here, the [plaintiff's] declaration—in the light most favorable to plaintiff. So viewed, the declaration establishes that plaintiff will present neither expert evidence from a therapist nor evidence of a

> diagnosable "emotional condition" to prove his claims. Plaintiff
> contends, however, that an emotional *condition* differs from states
> of emotional distress, such as humiliation, fear, and anger, and that
> he would introduce evidence of those emotional states at trial.
> Because plaintiff's proposed meaning of "emotional condition" is
> plausible and consistent with the overall declaration, the trial court
> erred when it granted defendants' motion.

*Id.* at 48-49 (emphasis in original).

*Schiele* provides useful discussion of the difference between an "emotional condition" and a claim seeking simply emotional distress damages. This could make a meaningful difference in interpreting the limitation in OEC 504(b)(4)(A). The Oregon Court of Appeals, however, did not approach the issue as a legal question to be reviewed *de novo* or as one of statutory construction of OEC 504(b)(4)(A). Instead, the court viewed it as a factual issue and applied a deferential standard of review. Thus, that decision, like the other opinions of the Oregon Court of Appeals discussing OEC 504, is not particularly instructive or helpful, let alone dispositive.

Opinions in this district court are similarly not particularly instructive or helpful. Most rely on the decision in *Baker v. English* to conclude that Oregon has a broad limitation or waiver of the psychotherapist privilege without considering whether *English* performed any analysis or determining whether the term "emotional condition" has any particular meaning under Oregon law. *See, e.g.*, *Wilson v. Decibels of Oregon, Inc.*, 2017 WL 393602, at *2 (D. Or. Jan. 26, 2017); *Hansen v. Combined Transp., Inc.*, 2014 WL 1873484, at *3 (D. Or. May 8, 2014). Indeed, the undersigned stated in dicta in a footnote in a case deciding the contours of the *federal* psychotherapist privilege that the Oregon rule appears to follow a broad approach to waiver. *See Swan v. Miss Beau Monde, Inc.*, 566 F.Supp.3d 1048, 1062 n.12 (D. Or. 2021). U.S. District Judge Anna Brown, adopting the findings and recommendation of U.S. Magistrate Judge Stacie Beckerman, on the other hand, distinguished *English* and concluded that "the mere allegation of

'emotional distress' without more does not put Plaintiff's medical condition at issue and does not constitute a waiver of the physician-patient privilege." *Bauer v. Old Dominion Freight Line, Inc.*, 2017 WL 11622025, at *2 (D. Or. Nov. 7, 2017). The Court could not find, and the parties did not provide, any opinion from a state or federal court performing a statutory construction analysis of OEC 504(4)(b)(A) on this question. Thus, the Court will perform such an analysis in considering how the Oregon Supreme Court likely would analyze OEC 504(4)(b)(A) on this issue.

"[The Court] begin[s] by recalling that OEC 50[4] is a statute, enacted into law by the legislature. Accordingly, the scope of the privilege—as well as any exceptions to it—is a matter of legislative intent." *See Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or. 476, 496 (2014) (interpreting OEC 503). To determine legislative intent of an Oregon statute, the Court, following Oregon's interpretative methodology, considers the statute's text, context, and pertinent legislative history. *See State v. Gaines*, 346 Or. 160, 171-72 (2009). "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 172.

### a. Text and Context

The statute does not define "mental or emotional condition." It also does not define or explain what it means for a communication to be relevant to an issue of the emotional or mental "condition" or what it means for a patient to rely on that "condition" in a legal proceeding. Further, the Oregon Supreme Court has concluded that the term "mental or emotional condition" is ambiguous. *See Ashley*, 312 Or. at 174 ("'Mental or emotional condition' may mean quite different things to a psychiatrist, a psychologist, an internist, a research physician, a social worker, a patient, a member of the clergy, a legislator, and a judge.").

The included statutory definition of "psychotherapist," however, provides some context for the phrase "mental or emotional condition." The definition of "psychotherapist" includes a person who is "[l]icensed, registered, certified or otherwise authorized under the laws of any state to engage in the diagnosis or treatment of a mental or emotional condition." Or. Rev. Stat. § 40.230(1)(c)(A). This suggests that an emotional or mental condition be something diagnosable or treatable, as opposed to transient and normal emotions, such as the more "garden variety" emotional distress feelings of humiliation or anger.

### b. Legislative History

The Oregon Supreme Court "considers the legislative commentary to the Oregon Evidence Code to be part of the Code's legislative history." *State v. Phillips*, 367 Or. 594, 607 (2021). Indeed, the Oregon Supreme Court cited the legislative commentary as support in discussing the limitation contained in OEC 504(4) when opining on the scope of the physician-patient privilege. *See Hodges*, 363 Or. at 611. That court also cited with approval the legislative commentary to OEC 504 in determining whether "mental or emotional condition" included treatment for drug addiction. *State ex rel. Juv. Dep't of Lincoln Cnty. v. Ashley*, 312 Or. 169, 178-80 (1991).

The legislative commentary to OEC 504(4)(b) describes the litigation limitation as follows:

> An exception applies whenever the mental or emotional condition of the patient is put in issue. In a criminal proceeding this means that there is no privilege if a defendant raises the defense of not responsible by reason of mental disease or defect, or the mitigating defense of extreme emotional disturbance. In a civil action, it means there is no privilege in a will contest in which the soundness of the testator's mind is challenged. *See* Rule 511.

Legislative Commentary to OEC 504, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 504.02 (7th ed. 2021).

The reference to "Rule 511" in the legislative commentary is to OEC 511, which addresses the waiver of privilege. *See* Or. Rev. Stat. § 40.280. This statute provides, in relevant part, that voluntarily disclosure waiving privilege does not occur by filing suit but "does occur, as to psychotherapists in the case of a mental or emotional condition and physicians in the case of a physical condition, upon the holder's offering of any person as a witness who testifies as to the condition." Or. Rev. Stat. § 40.280(4).

The legislative commentary to OEC 511 explains:

> The rule makes clear that the mere commencement of litigation does not constitute disclosure. *Nielson v. Bryson*, 257 Or. 179, 477 P.2d 714 (1970) (physician-patient privilege not waived by filing personal injury action). Thereafter, however, waiver can occur during discovery or at trial, either on direct or cross examination.
>
> * * *
>
> A person, merely by disclosing a subject which the person has discussed with an attorney or spouse or doctor, does not waive the applicable privilege; the person must disclose part of the communication itself in order to effect a waiver. . . . The one exception to the foregoing principle is contained in the final sentence of the rule. Where the holder of a privilege offers any person as a witness who testifies on the subject of the holder's physical, mental, or emotional condition, *all* privileges that might protect communications on that subject between the holder and a physician or psychotherapist, as the case may be, are waived.

Legislative Commentary to OEC 511, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence*, § 511.02 (7th Ed. 2021). The parties did not provide the Court with any other pertinent legislative history.

### c.  Analysis

The text of the litigation limitation is ambiguous, but taken in context with the definition of a psychotherapist supports a more narrow reading of the phrase "mental or emotional condition" to mean more than simply any mental or emotional state. The legislative history as

explained in the legislative commentary describes that the litigation limitation was meant to be parallel to the waiver in Rule 511. Indeed, Rule 511 is specifically cited. Further, the Oregon courts, including the Oregon Supreme Court, discuss the "nonprivileged" communications under Rule 504 in terms of the privilege having been "waived." This further supports the coordinating of the concepts under Rule 511 (waiver of privilege) with Rule 504(4) (nonprivileged). Waiver under Rule 511 is narrow.

Thus, considering the text, context, and legislative history, the Court finds that the Oregon Supreme Court likely would conclude that a litigant does not "rely" on a "mental or emotional condition" merely by claiming noneconomic damages or "garden variety" emotional distress such as humiliation and anger. Instead, a person must place his or her mental or emotional condition at issue such as by asserting a diagnosable condition, proffering a witness (typically, an expert) who will testify about the claimant's mental or emotional condition, or relying on portions of treatment records, diagnoses, or prognoses.

Defendants contend that Dr. Natkin waived his psychotherapist privilege merely by claiming noneconomic damages. Additionally, Dr. Natkin states that he is not asserting any diagnosable "mental or emotional condition," will not introduce any medical or psychological records, and will not have any expert medical or psychological testimony supporting his claim for noneconomic damages. Under these circumstances, the Court finds that Dr. Natkin has not waived his psychotherapist privilege under Oregon law.

**B.  Objections to the Discovery Order Resolving Plaintiffs' Motion**

### 1.  Waiver

Plaintiffs object that Judge Beckerman improperly considered proportionality and relevance because the Samaritan Defendants did not raise those objections in their response to Plaintiffs' Requests for Production and thus waived them. The response, however, did raise

relevance, burden, and proportionality in the Samaritan Defendants' general objections, which they incorporated by reference into their specific objections. The Samaritan Defendants also noted in their general objections that they are not subject to the jurisdiction of the court in California and that it was too soon for Plaintiffs to serve discovery, that they lodge preliminary objections, and that they reserve the right to supplement their objections if and when discovery becomes appropriate. The Samaritan Defendants also raised relevance, proportionality, and burden in their letter correspondence with Plaintiffs' counsel. Plaintiffs' counsel acknowledged that the Samaritan Defendants objected based on proportionality in letters to counsel regarding discovery. Accordingly, Judge Beckerman did not err in finding that the Samaritan Defendants did not waive these objections.

### 2.    Proportionality and Date and Subject Matter Restrictions

Plaintiffs generally object that Judge Beckerman did not perform the proper proportionality analysis because she did not consider whether Plaintiffs could obtain the requested evidence elsewhere or require the Samaritan Defendants to provide specific evidence of the burden that it would take to produce the requested discovery. Plaintiffs also object to the date and subject matter restrictions ordered by Judge Beckerman (*e.g.*, limiting disciplinary records only to the five years that Dr. Natkin would have been in the program, limiting disciplinary records only to interns and residents, limiting "360 evaluations," and so forth), because Defendants failed to provide evidence of burden needed for a proportionality evaluation.

Rule 26 of the Federal Rules of Civil Procedure requires a balancing when discovery is precluded because it is not proportional to the needs of the case. It is not clear from Judge Beckerman's Order that this balancing was performed. In most instances Judge Beckerman noted her findings regarding the relevance of the requested information but did not expressly make any findings regarding the other factors relevant to a proportionality determination. Specifically,

PAGE 15 – OPINION AND ORDER

Judge Beckerman did not discuss whether the burden on Defendants to produce the information outweighs its likely benefit. *See* Fed. R. Civ. P. 26((b)(1). Thus, the Court remands this issue to Judge Beckerman to perform this analysis regarding proportionality. Additionally, it appears that Plaintiffs provided new evidence and argument regarding relevancy, which may affect Judge Beckerman's relevancy analysis and proportionality balancing.

## CONCLUSION

The Court ADOPTS IN PART AND REMANDS IN PART Judge Beckerman's Discovery Order (ECF 238). The Court REMANDS to Judge Beckerman for further consideration Plaintiffs' informal motion to compel. The Court ADOPTS IN PART Discovery Orders (ECF 239 and ECF 248) addressing the Samaritan Defendants' informal motion to compel. The Court GRANTS IN PART AND DENIES IN PART the Samaritan Defendants' informal motion to compel as stated in Judge Beckerman's Orders and this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 1st day of September, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 16 – OPINION AND ORDER