IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DR. ERIK NATKIN, D.O. P.C.**, a Utah corporation; and **DR. ERIK NATKIN, D.O.**, an individual, | Case No. 3:16-cv-1494-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **AMERICAN OSTEOPATHIC ASSOCIATION,** *et al.*, | |
| Defendants. | |

Benjamin Natkin, LAW OFFICES OF BENJAMIN NATKIN, 9854 National Boulevard, Suite 369, Los Angeles, CA 90034; and Clark E. Rasche, WATKINSON LAIRD RUBENSTEIN PC, 1203 Willamette Street, Suite 200, P.O. Box 10567, Eugene OR 97440. Of Attorneys for Plaintiffs.

Blake J. Robinson, P. Andrew McStay, Jr., and Caitlin P. Shin, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland OR 97201. Of Attorneys for Defendants Samaritan Health Services, Inc.; Good Samaritan Hospital Corvallis; Albany General Hospital; Mid-Valley Healthcare, Inc.; Samaritan Pacific Health Services, Inc.; Samaritan North Lincoln Hospital; and Dr. Luis R. Vela, D.O.

J. Michael Porter, Jollee F. Patterson, and Katie M. Bennett, MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204; and Mark H. Meyerhoff and Christopher S. Frederick, LIEBERT CASSIDY WHITMORE, 6033 West Century Boulevard, Fifth Floor, Los Angeles, CA 90045. Of Attorneys for Defendant Western University of Health Sciences.

Michael C. Lewton, COSGRAVE VERGEER KESTER LLP, 900 SW Fifth Avenue, 24th Floor, Portland, OR 97204; and John R. Danos, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, 555 S. Flower Street, Suite 2900, Los Angeles, CA 90071. Of Attorneys for Defendant American Osteopathic Association.

Thomas R. Rask III, KELL ALTERMAN & RUNSTEIN LLP, 520 SW Yamhill Street, Suite 600, Portland, OR 97204; and Ronald Thomas Vera, LAW OFFICES OF VERA AND BARBOSA, 223 West Foothill Boulevard, Suite 200, Claremont, CA 91711. Of Attorneys for Defendant Osteopathic Postdoctoral Training Institute, OPTI-West Educational Consortium.

**Michael H. Simon, District Judge.**

Before transferring this case to the undersigned U.S. District Court Judge,

U.S. Magistrate Judge Stacie Beckerman issued a Supplemental Discovery Order (ECF 288).

That order addressed in more detail the proportionality analysis from a previous discovery order

issued by Judge Beckerman resolving a motion to compel filed by Plaintiffs. Plaintiffs had

appealed that original discovery order to this Court, and this Court remanded to Judge

Beckerman the portion of the order that relied on proportionality for further elucidation.

Plaintiffs now appeal Judge Beckerman's Supplemental Discovery Order.

Also before the Court are two Motions for Protective Orders, one filed by the Samaritan

Defendants (Good Samaritan Hospital Corvallis, Samaritan Health Services, Inc., and Dr. Luis

R. Vela, DO) and one filed by Defendant Western University of Health Sciences (Western)

(collectively, the Moving Defendants). The Moving Defendants seek protection from having to

respond to substantially similar requests for admission propounded by Plaintiffs. For the reasons

discussed below, the Court grants in part Plaintiff's appeal and grants the Moving Defendants'

motions for protective order.[1]

---

[1] Notwithstanding Plaintiffs' and the Samaritan Defendants' request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7 1(d)(1).

**STANDARDS**

### A. Appeal of Magistrate Order

The Federal Magistrates Act grants district courts the authority to delegate certain matters to magistrate judges. *See* 28 U.S.C. § 636(b)(1). In civil actions, a district court may designate a magistrate judge to determine any pretrial matter, except motions for injunctive relief, for judgment on the pleadings, for summary judgment, to permit or deny maintenance of a class action, to dismiss for failure to state a claim, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). For any of these excluded motions, a district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B).

Rule 72 of the Federal Rules of Civil procedure implements the authority provided by the Federal Magistrates Act. Under Rule 72(a), a magistrate judge may "hear and decide" all referred pretrial matters that are "not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a); *see also Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (explaining that "magistrate judges may hear and determine nondispositive matters, but not dispositive matters"). For pretrial matters referred to a magistrate judge that are dispositive of a claim or defense, without consent by all parties, Rule 72(b) allows the magistrate judge only to "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1).

The distinction between a dispositive motion and a nondispositive matter is significant for the standard of review. When a party timely objects to a magistrate judge's findings and recommendations concerning a dispositive motion, the district judge must make a *de novo* determination of those portions of the magistrate judge's proposed findings and recommendations to which an objection has been made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). When a party timely objects to a magistrate judge's determination of a

nondispositive matter, however, the district judge may reject that determination only when it has

been shown that the magistrate judge's order is either clearly erroneous or contrary to law. 28

U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This means the Court "will evaluate the Magistrate

Judge's factual findings to determine if any are clearly erroneous" and "will evaluate the

Magistrate Judge's legal conclusions to determine if any are contrary to law, which involves a *de*

*novo* review of those issues." *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin.,*

*Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019); *see also id.* at 1141-42.

## B. Motions for Protective Order

Rule 26(b) of the Federal Rules of Civil Procedure describes the scope of discovery, in

relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit.

Fed. R. Civ. P. 26(b)(1).

Rule 26(c)(1) allows a court to issue an order "to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." As relevant here, that rule

specifically allows a court to: forbid disclosure or discovery; specify the terms for disclosure or

discovery; prescribe a discovery method other than the one selected by the party seeking

discovery; and forbid inquiry into certain matters or limit the scope of disclosure or discovery.

Fed. R. Civ. P. 26(c)(1)(A)-(D).

**DISCUSSION**

## A. Appeal of Supplemental Discovery Order

### 1. Waiver

Plaintiffs argue that the Court should reconsider its decision that the Samaritan

Defendants did not waive their objections based on relevancy and proportionality. Plaintiffs,

however, did not move for reconsideration of the Court's Opinion after it was issued. Nor do

Plaintiffs now present any standard for reconsideration or argue how that standard is met.

In asking for reconsideration, Plaintiffs also focus solely on the fact that the Samaritan

Defendants included the objections in their general objections in formally responding to the

discovery when it was served during the time this litigation was in California. Plaintiffs do not

discuss the remainder of the Court's discussion on waiver. The Court noted that the Samaritan

Defendants objected that they were not subject to the California court's jurisdiction and it was

too soon for discovery. Additionally, the parties engaged in less formal discovery practice in

Oregon, and the Court specifically noted that the Samaritan Defendants objected in

correspondence with Plaintiffs' counsel on the basis of proportionality and relevance, and that

Plaintiffs' counsel acknowledged those objections. The Court declines to reconsider its ruling on

waiver.

### 2. Relevancy

The Court reviews Judge Beckerman's legal conclusions regarding relevancy de novo.

*See Nationstar Mortg., LLC v. Decker*, 2015 WL 519884, at *2 (D. Or., Feb. 9, 2015). Relevancy

for discovery purposes is a low threshold. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

351 (1978) (defining relevance in the context of discovery to include "any matter that bears on,

or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

case"). For this reason, a court should "interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Id.* at 351 n. 12.

In considering relevancy, however, the Court is mindful of the claims remaining in this case, which are claims for failure to provide fair procedure, wrongful termination, intentional interference with contract, breach of contract, and defamation. Thus, Plaintiffs' argument that certain evidence is relevant because it may show a general "toxic environment" or hostile work environment fails to bear on any issue in the case.

### 3.  RFP No. 8

Plaintiffs object that the file of a resident who was terminated the year before Natkin entered the program is relevant and should be produced because the Samaritan Defendants made no showing of burden. The Court agrees that it is relevant. Although this resident was fired by the program director before Dr. Vela, information regarding the process provided by Dr. Vela's predecessor is a relevant comparator to show whether Dr. Vela provided adequate process. Comparing only the process Dr. Vela provided to other students may not suffice if Dr. Vela consistently provided inadequate process to all students. The Samaritan Defendants argue that Plaintiff Natkin either received fair procedure or he did not and what happened to others is not relevant, particularly under a different Director of Medical Education. The Court disagrees. Comparing the process provided to other residents is relevant to help the jury understand fair procedure and consider whether the process provided to Natkin was adequate. Because the burden to produce the file of a single, already identified resident is minimal, the Court orders the Samaritan Defendants to produce this file.

Plaintiffs also object to the cut-off date imposed by Judge Beckerman, June 30, 2015, the date Natkin would have graduated. The Court finds no clear error in Judge Beckerman's analysis of this cut-off date for all of the requests for production.

PAGE 6 – OPINION AND ORDER

### 4. RFP No. 9

Plaintiffs object that residents and others who resigned for reasons other in lieu of termination are relevant to show the "toxic" environment Dr. Vela created, because they may have resigned for that reason. Not only is this speculative, but Plaintiffs fail to explain the relevancy of the purported toxic environment created by Dr. Vela to Plaintiffs' claims.

### 5. RFP No. 10

Plaintiffs will receive or have received the "360 evaluations" for interns, residents, and fellows subjected to discipline or who resigned in lieu of discipline in response to RFP Nos. 8 and 9. Plaintiffs object that they need *all* 360 evaluations, not just those for persons subject to discipline, to know whether the evaluations were used in the manner intended. Plaintiffs believe that the SHS Defendants "never" used the 360 evaluations in the manner intended. Plaintiffs, however, do not explain how the use of the 360 evaluations in the manner intended is relevant to the process provided to Natkin during his disciplinary proceedings, whether the Samaritan Defendants breached their contract, whether Dr. Vela defamed Natkin, or whether the Samaritan Defendants interfered with Natkin's contracts with others. Nor do Plaintiffs contend these evaluations are likely to lead to the discovery of relevant material on these claims. For example, Plaintiffs do not argue that the proper use of the 360 evaluation is a contractual term that Plaintiffs contend was breached. Without explaining the relevance, then as Judge Beckerman concluded, the files requested are of minimal probative value. The Court thus finds no error in Judge Beckerman's analysis.

### 6. RFP No. 11

This RFP requests the rotational evaluations of orthopedic surgery residents. As with the other RFPs, Judge Beckerman limited the scope of this discovery to the time period Natkin would have been in the program. This results in Plaintiffs receiving a full set of evaluations for

Natkin's residency class, one year less for the next class down, two years less for the next class

down, and so forth. Plaintiffs argue that they need all of the rotational evaluations for the persons

who are in the relevant residency classes, not a subset of rotational evaluations for those

residents. Natkin argues these evaluations are relevant to show that he was treated differently

than similarly situated residents. Plaintiffs, however, are not bringing a discrimination or equal

protection claim. Plaintiffs' most relevant claim is that Natkin did not receive fair process in his

disciplinary proceeding.[2] That might include providing relevant comparators that received

appropriate process in their disciplinary proceedings. If one resident received a fair and balanced

*evaluation* and Natkin did not receive a fair and balanced *evaluation*, however, that does not tend

show anything about whether the Samaritan Defendants provided Natkin with adequate process

during his *disciplinary hearings*. The rotational evaluations may identify residents who had

disciplinary issues, but Plaintiffs already are receiving those evaluations. The Court finds no

clear error in Judge Beckerman's analysis of this RFP.

### 7.  RFP No. 12c

This RFP requests the curriculum vitae (CV) of every Director of Medical Education,

Program Director, and faculty member. Judge Beckerman originally ordered the Samaritan

Defendants to produce the CVs for the members of the committees involved in Natkin's

termination and concluded the other requested CVs were not relevant. Judge Beckerman did not

revisit this determination because it was not based on proportionality but on relevancy.

Plaintiffs now request only two additional CVs, Dr. Vela's predecessor Dr. Craft, who

authored the policies at issue in this case, and Dr. Vela's successor, Dr. Daskalos. The Court

---

[2] Natkin's wrongful termination claim is based on his alleged termination as a result of his purportedly protected conduct at the confidential peer review conference.

finds that Dr. Craft's CV is relevant but Dr. Daskalos's is not. The Samaritan Defendants are

directed to produce the CV of Dr. Craft.

### 8.  RFP Nos. 19-21[3]

These RFPs request Dr. Vela's file as an intern, resident, and fellow from nearly 20 years

ago. Judge Beckerman found them to be too remote in time from the alleged events and not

relevant, and also not in the possession of the Samaritan Defendants. The Court agrees with

Judge Beckerman's relevancy determination and finds no clear error in her proportionality

analysis and other conclusions.

### 9.  Conclusion

The Court orders the Samaritan Defendants to produce the file of the orthopedic surgeon

resident terminated the year before Natkin began his residency and the CV of Dr. Craft.

Otherwise, the Court affirms Judge Beckerman's Supplemental Discovery Order.

## B.  Motions for Protective Order

Under Rule 36(a)(1) of the Federal Rules of Civil Procedure, "[a] party may serve on any

other party a written request to admit, for purposes of the pending action only, the truth of any

matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or

opinions about either, and (B) the genuineness of any described documents." The scope of

Rule 26(b)(1) includes "discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense," which "need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

---

[3] The parties' dispute over RFP No. 17 is moot. The Samaritan Defendants state in their response that they are producing the requested documents in their possession.

Plaintiffs served 103 identical requests for admission (RFA) on all Defendants plus non-party entities affiliated with the Samaritan Defendants. The Moving Defendants move for protective orders. The Samaritan Defendants move for relief from responding to 40 specific requests and for an order protecting their affiliated entities from responding to the requests in their entirety.[4] Western moves for protection from responding to the requests in their entirety.

### 1.  Samaritan Affiliated Entities

Rule 36(a)(1) allows a party to RFAs *on any other party*. The affiliated entities (Albany General Hospital, Mid-Valley Healthcare, Samaritan Pacific Health Services, Inc., and Samaritan North Lincoln Hospital) are no longer parties to this action because the Court dismissed all the claims against them.[5] Thus, Plaintiffs may not serve them with RFAs. This portion of the Samaritan Defendants' motion is granted.

### 2.  Requests for Admission

Western challenges the RFAs as: (1) improperly seeking facts and to authenticate documents unrelated to Western; (2) relating to an opinion of facts that are centrally in dispute; (3) so complicated and ambiguous as to be unanswerable; (4) calling for legal conclusions; and

---

[4] The Court rejects Plaintiffs' contentions that the Samaritan Defendants' response to the RFAs have rendered moot their motion. The Samaritan Defendants explain in their motion that they submitted a response to Plaintiffs in which they respond to some RFAs and object to others. Although the Samaritan Defendants could have waited for Plaintiffs to file a motion to compel, given the history in this case and the pending deadlines, for judicial efficiency the Court considers the motion on the merits.

[5] Contrary to Plaintiffs' assertion, after the Court dismisses all claims against a party, they do not remain a party to the litigation until judgment is entered. Courts rarely enter partial judgment under Rule 54(b). The routine practice is to wait until all claims are resolved and enter one final judgment. This is to avoid piecemeal appeals—had the Court entered partial judgment on its dismissal of the affiliated entities under Rule 54(b), Plaintiff may have appealed that judgment and that appeal would be advancing in the Ninth Circuit while this litigation was advancing. At the close of this litigation, there may be a second appeal and that would not serve the interests of the parties or the judicial system.

(5) reiterating allegations from the Second Amended Complaint (SAC). The Samaritan

Defendants challenge the RFAs as (1) broad and complicated; (2) excessive; (3) irrelevant;

(4) reiterating the allegations of the SAC; and (5) seeking legal conclusions.

Rule 36(a)(1)(a) permits requests for admissions as to "facts, the application of law to

fact, or opinions about either." Requests for purely legal conclusions, however, are generally not

permitted. *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (holding that

requests seeking purely legal conclusions are not permitted under Rule 36); *Music Grp. Macao*

*Com. Offshore Ltd. v. Foote*, 2015 WL 579688, at *2 (N.D. Cal. Feb. 11, 2015) (same). As

explained in 7 *Moore's Fed. Prac.* § 36.10[8] at 36-26 (3d ed. 2008) (footnotes omitted):

> Requests for admission may relate to the application of law to fact.
> Such requests should not be confused with pure requests for
> opinions of law, which are not contemplated by the rule. Nor are
> requests seeking legal conclusions appropriate when proceeding
> under Rule 36.

*See also* 8A Charles Wright, Arthur Miller, & Richard Marcus, *Fed. Prac. and Proc.* § 2255, 534

& n.8 (2d ed. 1994) (citing cases). As this Court previously noted, however, "the distinction

between the application of law to fact and a legal conclusion is not always easy to draw.'"

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1196 (D. Or. 2015),

*aff'd*, 702 F. App'x 537 (9th Cir. 2017) (quoting *In re NCAA Student-Athlete Name & Likeness*

*Licensing Litig.*, 2012 WL 4743121, at *2 (N.D. Cal. Oct. 3, 2012)).

As this Court explained in *Benson Tower*,

> Courts that have grappled with this question have attempted to
> provide guidance. For example, in *Reichenbach v. City of*
> *Columbus*, a plaintiff alleging disability discrimination under the
> Americans with Disabilities Act issued an RFA requesting that the
> defendants "admit that the curb ramp at issue was not compliant
> with current federal accessibility design standards." 2006 WL
> 143552 (S.D. Ohio 2006) at *2. The defendants objected that this
> request sought only a conclusion of law, and the court agreed. *Id.*
> A proper request, according to the court, instead might have asked,

PAGE 11 – OPINION AND ORDER

> "Defendants adopted a transition plan within six months of January 26, 1992, as required by 28 C.R.F. 35.150(d)(1). Admit or deny." *Id.* n.3. According to the court in *Reichenbach*, the former question involves a pure question of law and is thus improper; the latter question applies operative facts to relevant law. *See also Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (holding that "determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries"); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (holding that a defendant may object to an RFA asking her to admit that she is a "public figure" as defined in Supreme Court case law as improperly seeking a purely legal conclusion).

*Id.*

"Requests for admission may be considered 'unduly burdensome when they are excessive in number, complicated, or ambiguous.'" *Dang v. Johnson*, 2023 WL 157616, at *3 (W.D. Wash. Jan. 11, 2023) (quoting *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 20 (2007)); *see also Mitchell v. Yeutter,* 1993 WL 139218 (D. Kan. 1993) (finding 90 requests for admission excessive and too focused on "factual minutiae," limiting propounding party to 40 requests, and warning that "[a] party cannot put the burden of discovery on the other party by obtaining all factual details by means of requests for admission"). Additionally, "requests for admission should not be compound. Requests for admission should be simple and clearly phrased "in such a manner that they can be answered with a simple admit or deny without an explanation." *Astafan v. BRK Hosp., Inc.*, 2022 WL 2102879, at *4 (C.D. Cal. Apr. 1, 2022) (citations omitted) (rejecting motion to compel RFAs that are "compound, vague, and overbroad").

Rule 36(a)(1)(b) allows requests to admit "the genuineness of any described documents," with Rule 36(a)(2) requiring that a copy of the document be included with the RFA unless it is otherwise furnished. Plaintiffs request many document be admitted as genuine.

The Court has reviewed Plaintiffs' RFAs. They are replete with errors. The Court will not go through all 103 RFAs and identify each error. The Court will, however, provide some

guidance so that Plaintiffs may craft RFAs that comply with the Federal Rules of Civil

Procedure, and Defendants may craft compliant answers. First, the Court finds that Plaintiffs'

RFAs are excessive. This is exacerbated by the fact that they are compound questions, with

many RFAs containing multiple questions. This results in the 103 RFAs containing several

hundred questions. The Court limits Plaintiffs to 35 single RFAs with leave to request additional

RFAs after showing that 35 questions crafted in compliance with this ruling is insufficient.

Second, Plaintiffs may not propound identical RFAs on every defendant on the theory

that they are all agents of one another, share knowledge, or are jointly and severally liable. The

Court repeatedly has rejected that theory. For example, Plaintiffs ask about documents affiliated

with certain defendants and the corporate structure of all the various business entities in this

litigation (including Plaintiff Natkin's business entity), but not every defendant knows about the

documents or the corporate structure of every other defendant. It is unduly burdensome to

require every defendant to investigate the corporate structure of every entity to respond to the

RFAs. Nor is having every defendant authenticate documents, emails, and letters at this stage of

the litigation an efficient use of resources. The Court has a pretrial exhibit process that

streamlines the process. It may be appropriate for the defendant who drafted, or sent and

received, the document to authenticate its genuineness, but requiring parties who did not draft,

send, or receive documents to admit or deny their genuineness is unduly burdensome.

Third, many of Plaintiffs' RFAs are broad, compound, or are otherwise not simple and

clearly phrased. Some are nearly a page in length. Most contain many different facts within the

same question. Many essentially take Plaintiffs' theory of various aspects of the case and ask

Defendants to admit or deny. *See* Wright & Miller, 1 FED. R. OF CIV. PROC., RULES AND

COMMENTARY, Rule 36 (2022) ("If a request asks a party to admit factual content that is true but

phrases it in a way that interjects an inference into the request, a party may qualify its admission

to disavow the included inference."). Regarding the RFAs to which Defendants argue Plaintiffs

seek a legal conclusion or that involve issues "in dispute," the Court directs the parties to

Rule 36. Defendants may not object to answering an inquiry simply because it requires

"application of law to fact" or because it involves "matters which that party regards as 'in

dispute.'" Fed. R. Civ. P.36(a) advisory committee's notes 1970 Amendment. Defendants may,

however, give as a reason for an inability to admit or deny that there is an existence of a genuine

issue of fact or law, *id.*, but may not object solely on the ground that the request presents a

genuine issue for trial. Fed. R. Civ. P. 36(a)(5). In other words, it may be that an RFA "involving

the application of law to fact may create disputes between the parties which are best resolved

after much or all of the other discovery has been completed." Fed. R. Civ. P.36(a) advisory

committee's notes 1970 Amendment.

Finally, some of Plaintiffs' RFAs are not relevant to the remaining claims or parties.

Information about dismissed claims and dismissed parties are not relevant. The fact that

dismissal was without prejudice does not mean that Plaintiffs may obtain discovery on claims

and parties that are no longer in the case, such as the affiliated entities and the antitrust claim.

## CONCLUSION

The Court GRANTS the Motions for Protective Order filed by Western University of

Health Science (ECF 296) and the Samaritan Defendants (ECF 299).

**IT IS SO ORDERED**.

DATED this 15th day of May, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 14 – OPINION AND ORDER